Hemphill, C. J.
This application for a headright certificate of the first class — viz., for a league and labor of land, is made under the 12th section of “ an act to detect fraudulent land certificates and to provide for issuing patents to legal claimants,” approved February 4, 1841, p. 172, Laws of the Fifth Congress.
This section is expressed in the following terms, viz.: “That any person who conceives himself entitled to laud, but has obtained a certificate from a board for too much land, he may deliver the same to the district judge of the county where the certificate was issued, who shall destroy the same, after which he or she may apply for the quantity of land to which he or she may be entitled, and shall make the same proof and be entitled to the same privileges as required and granted by the provisions of this act.”
The applicant had on the 6th day of October, 1845, obtained from the board of land commissioners of Bexar county, a second class certificate for 1,2S0 acres of land, and he attempts under the privilege accorded by this section to deliver up this certificate for cancellation, and obtain one for a league and labor of land.
Is the claimant’s case one of that class for which relief has been provided in the law? By the terms of the law the remedy is extended only to cases where the certificate granted by the board, and which is offered to be surrendered, is for too much land/ but there is an .entire silence in relation to certificates for a less amount of land than the claimant is justly entitled to. Why this partial provision should have been made — why relief was not granted against the misapprehensions of the board as well when a certificate was issued for too little as too much land, it is not at all material to inquire. A knowledge of the facts, or of the policy on which the provision is founded, could give no aid in the construction of its terms, for they are too plain for doubt or misconstruction.
Were we to indulge in conjectures as to the cause of the omission of all relief for individuals circumstanced as the appellee, we could easily imagine the inadvertence of the congress to have arisen from the fact that such cases were extremely rare — at least in comparison with those where certificates for too much land had been issued. There -were many in that situation, and not being recommended, they could not be patented for either the whole or a part of the amount.
But to whatever causes the defect of the provision may be attributed, it is clear that its remedial operation cannot be extended to the claim of the appellee, without assuming powers by construction which belong rather to the legislative than the judicial branch of the government. The power conferred on the court in this section is not *(414) one within the scope of its general jurisdiction, it authorizes a suit against tire government — a party not directly amenable to judicial authority, unless by its own special permission. The suit can be brought only under special circumstances, defined precisely in the statute, and must be sustained on proof, the particulars of whiah and the number of witnesses are specified by positive, imperative legal provisions.
In the case of Casinova v. The State of Texas, decided at this term, we held that the power to hear and determine claims against the government for lieadright certificates to land was a special authority and must be strictly pursued according to its terms; that all the conditions, restrictions or limitations on the authority must be literally and substantially complied with, or otherwise the jurisdiction over the claim would not be vested in the court. This principle is decisive of the application in this suit. The claimant has not brought himself within the terms, the scope or object of the provision on which the suit is founded, and his claim must therefore be rejected.
This view of the case being conclusive, it will not be necessary to sift the facts furnished in the record. Were they investigated, they would be found wholly insufficient to support the claim. The evidence is contradictory — one of the witnesses testified that the appel-lee was a resident-citizen of Texas at the date of the declaration of independence — was a married man and the head of a family, etc. This evidence, without any explanation of these expressions, would prove in the most explicit manner that the appellee was in Texas at the date of the declaration of independence; that his family was residing here with him. The other witness proves that he left Texas in January, 1836, and went to Mexico for his wife, and that he did not see him again in this country until 1837. A claimant circumstanced as the appellee might possibly be able to explain and justify his absence in the territory of the enemy during the period of the extremest peril to the country. This was, however, not attempted in this case.
The government has been profusely liberal in her bounties out of the public domain, but these are intended only for citizens whose actual residence in the co'untry and whose patriotic conduct as against the common enemy are unequivocal and can be established by legal proof beyond dispute.' The questions as to domicile and the facts which on that point must be made clear, to demonstration, by an applicant, have been decided and determined by the late supreme court in the case of the Republic v. Young, and the Same v. Skidmore, and these, together with some of the facts which must be adduced #as *(415) to the conduct of the party in the struggle against the enemy, have been reviewed in the case of Casinova v. the State of Texas, decided at this term, and it is, therefore, unnecessary to enter into any detailed examination of the questions suggested by the statement in the record.
It is ordered, adjudged and decreed that the judgment of the court below be reversed, and that the suit be dismissed at the costs of the appellee, and it is also ordered that the clerk of this court do deliver the appellee or his attorney of record, the original certificate for 1,280 acres of land, granted to the appellee hy the board of land commissioners of Bexar county, and which was attached to and sent up with the transcript from the court below.